[Cite as *In re B.Z.D.*, 2016-Ohio-886.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. 15 JE 0021 |
| | ) | |
| B.Z.D. | ) | |
| | ) | OPINION |
| | ) | |
| | ) | |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from the Court of Common Pleas, Juvenile Division, of Jefferson County, Ohio Case No. 2013-DN-024 |
| JUDGMENT: | Affirmed. |
| APPEARANCES: | |
| For Appellant: | Atty. Judith M. Kowalski 333 Babbitt Road Suite 323 Euclid, Ohio 44123 |
| For Appellee: | Atty. Amanda J. Abrams 125 S. 5th Street Steubenville, Ohio 43952 |
| Guardian Ad Litem: | Atty. Bernard Battistel, 2630 Lafayette Blvd. Steubenville, Ohio 43952 |
| JUDGES: | |

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated: March 7, 2016

WAITE, J.

{¶1} This appeal was filed from the trial court's order terminating the parental rights of the natural father ("Appellant") and granting permanent custody of the minor child, ("B.Z.D.") to Jefferson County Department of Job and Family Services ("Appellee").

{¶2} We note at the outset that after a review of the record and the parties' briefs in this matter, Appellee's brief incorrectly cites to another case that is not before this Court and incorporates the procedural history of that case in its brief. Therefore, any references to that case are disregarded by this Court and are not addressed herein.

{¶3} After an approximately two-year placement with a foster family, the permanent surrender of parental rights by the natural mother and failure to comply with the case plan by natural father, Appellee was awarded permanent custody of the child. Appellant appeals the termination of his parental rights. Due to her permanent surrender of her parental rights, natural mother is not a party to this appeal. As the trial court properly applied the law and complied with all statutory requirements and a review of the record supports the trial court's decision, the judgment of the trial court is affirmed.

Facts

{¶4} Appellant and the natural mother cohabitated for a period of time and Appellant testified he was aware of the pregnancy. At some point prior to the birth of B.Z.D., the natural mother left the home and did not return. B.Z.D. was born on April 18, 2013. At the time of the child's birth, the mother tested positive for Subutex,

opiates and marijuana. The child also tested positive for Subutex and opiates at birth. As a result, the child spent approximately two weeks at Magee Women's Hospital in Pittsburgh. An *ex parte* order granting emergency custody to Appellee was entered by the trial court on May 3, 2013. Appellee filed a complaint for neglect and abuse, sought dependent child status, and filed a motion for temporary custody on May 6, 2013. A shelter hearing was held on that date and the child was adjudicated neglected, abused and dependent. Temporary custody was granted to Appellee. A guardian ad litem was appointed in the matter as well as counsel for mother. Mother relinquished her parental rights to the child and a permanent surrender of the child was completed by court judgment entry on May 7, 2013.

{¶5} During the permanent surrender process, mother informed Appellee of the potential father's identity. Appellant was served in the matter and was appointed counsel. A hearing was held on May 29, 2013 and the trial court issued its judgment entry on June 13, 2013, again adjudicating the child as abused, neglected and dependent. Temporary custody was granted to Appellee and Appellant was ordered to cooperate with a case plan. Paternity testing was completed which determined that Appellant could not be excluded as the father. Therefore, Appellant was established by the trial court to be the father by a judgment entry dated June 26, 2013.

{¶6} A case plan was filed by Appellee on July 5, 2013, which acknowledged mother's permanent surrender of the child. In the plan, Appellee raised concerns regarding Appellant, including his history of criminal behavior, drug and alcohol

abuse, and his mental health issues. In order to comply with the case plan, Appellant was required to refrain from drug and alcohol abuse; attend mental health counseling on a regular and consistent basis; take his medications as prescribed; and follow through with all mental health, physician and therapy appointments.

**{¶7}** On May 2, 2014, Appellee filed a motion for extension of temporary custody for six months. A progress summary report was incorporated in the motion and indicated Appellant continued to receive mental health treatment; had passed all but one of his random urine screens, and had attended at that time two anger management groups per week. The report also stated that Appellant was compliant with scheduled parent-child visitations each week and only cancelled for illness. It also reflects that Appellant interacted well with his son, including feeding, changing his diapers and talking with the child. The visits were expanded to two supervised visits per week, for four hours total. Appellant was also given parent aide services and he continued to meet with representatives once per week. The report also indicated that Appellant had filed a petition for custody of the child in September of 2013 which was ultimately denied by the trial court based on Appellant's past history of criminal behavior including charges of domestic violence and drug trafficking. We note that this information was contained only within the progress report found in this record along with testimony at the hearing on this matter. The actual record of the custody proceedings was not made a part of this record.

**{¶8}** On June 4, 2014, a hearing was held on the motion for extension of temporary custody. By agreement of the parties, the trial court granted the extension of temporary custody for six months.

**{¶9}** On November 7, 2014, Appellee filed a second extension of temporary custody for a period of six months. The case plan progress summary incorporated into this second motion was nearly identical to the earlier progress report, with the addition that Appellant's visits were to move from supervision at the agency location to in-home visits commencing November 12, 2014. These also were to include overnight visits. The progress summary also stated that another petition for custody was filed by Appellant and a hearing on that petition was scheduled for January 6, 2015. Again, the record of the custody matter is not before us.

**{¶10}** A hearing on the second extension motion was held on December 3, 2014. The parties agreed to another six month extension of temporary custody.

**{¶11}** On April 21, 2015, Appellee filed a comprehensive case plan with the court. In the section entitled, "Concerns/Expected Changes/Services" the plan stated, "[the child] is in need of Permanency. [The child] is unable to self-protect. Reunification cannot be achieved". On April 22, 2015, Appellee filed a motion for permanent custody, or in the alternative, protective supervision if legal custody was granted to Appellant. Again, a summary of progress was incorporated. That summary repeated that a second custody motion had been filed by Appellant in October 2014 and a custody hearing was scheduled for January 2015. Importantly, the summary also stated that Appellant had sent a letter to both the court and

Appellee in December of 2014 indicating that he was not ready for custody and wanted to wait for a full custody hearing until the child was five years old. Again, the record in Appellant's custody filings is not before us. However, in Appellant's testimony regarding this matter he acknowledged drafting and sending this letter to the court.

{¶12} A hearing was held on Appellee's permanent custody motion on June 5, 2015. Testimony was provided by a medical records coordinator for the behavioral health center attended by Appellant; a therapist from this behavioral health center; Appellant's case manager from the center; a caseworker for Appellee and, finally, from Appellant himself. The guardian ad litem also submitted a written report to the court, recommending permanent custody be given to Appellee. Appellant's extensive case file from the Jefferson Behavioral Health System was admitted into evidence. A thorough review of that file reveals that after being charged with petty theft in late 2014, Appellant began to miss both counseling and anger management appointments. While he had made commitments to his caseworker to take care of his outstanding warrants for failure to appear in the petty theft matter, he never followed through. He also tested positive for cocaine during a random urine screening. The file also shows that his caseworker assisted Appellant in drafting the letter to Appellee and the court concerning his current inability to care for his son. Testimony by his caseworker and Appellant at the hearing acknowledged Appellant's conduct and that Appellant was unable to take custody and desired to postpone review until the child was five.

**{¶13}** On June 19, 2015, the magistrate issued its judgment, granting permanent custody to Appellee and terminating Appellant's parental rights. The magistrate's decision outlined the statutory factors and cited a number of factors warranting a grant of permanent custody to Appellee including: failure to comply with the case plan; failure to complete drug and alcohol counseling; failure to complete mental health counseling; failure to submit random drug screens since February 2015; a positive drug screen for cocaine; outstanding warrant for petty theft; extensive criminal history; and Appellant's admission that he was not able to care for the child.

**{¶14}** Appellant filed objections to the magistrate's decision, followed by additional objections after a transcript of the hearing was prepared. Appellee filed a response to the objections. The trial court ultimately overruled Appellant's objections and adopted the magistrate's decision by judgment entry dated September 22, 2015. Appellant filed this timely appeal, raising four assignments of error for review. Due to the related nature of the first two assignments of error, we will address them together.

<u>ASSIGNMENT OF ERROR NO. 1</u>

THE DECISION TO GRANT PERMANENT CUSTODY TO THE JEFFERSON COUNTY CHILDREN'S SERVICES DIVISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE; FURTHER, THE AWARD OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

<u>ASSIGNMENT OF ERROR NO. 2</u>

THE AWARD OF PERMANENT CUSTODY WAS NOT IN THE BEST INTERESTS OF THE MINOR CHILD.

**{¶15}** Appellant is challenging the weight of the evidence supporting the trial court's order granting permanent custody to Appellee. Appellant contends the trial court erred in awarding permanent custody to Appellee where the evidence presented was "minimal and conflicting" and the witnesses testifying on behalf of Appellee were unfamiliar with Appellant and his case. Appellant also asserts that the record contains far more evidence that he successfully bonded with his son and had a positive track record of case plan compliance.

**{¶16}** Parental custody is a "fundamental liberty interest" of a parent, protected by the Fourteenth Amendment of the United States Constitution. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388 (1982). It is well settled that "a court exercising Juvenile Court jurisdiction is invested with a very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment." *In re Anteau,* 67 Ohio App. 117, 119, 36 N.E.2d 47, 48 (1941). "The term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1184 (1990), citing *State v. Adams*, 62 Ohio St.2d 151, 157, 172-173, 404 N.E.2d 144, 148-149 (1980). A juvenile court's decision to terminate parental rights must be supported by clear and convincing evidence. *Santosky, supra*, paragraph three of the syllabus; R.C. 2151.414(B)(1).

Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is [an] intermediate [standard], being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*. (Emphasis sic).

*Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶17}** In reviewing a juvenile court's decision to ascertain whether it is supported by clear and convincing evidence, "a reviewing court may not as a matter of law substitute its judgment as to what facts are shown by the evidence for that of the trial court" as the "trial judge, having heard the witnesses testify, was in a far better position to evaluate their testimony than a reviewing court." *Id.* at 478. "Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false." *Id.* "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶18}** Once a child has been placed in temporary custody with an agency, it may file for permanent custody pursuant to R.C. 2151.413(A). R.C. 2151.414 contains the procedures a juvenile court must follow in making its determination

regarding a request by the agency for permanent custody. *In re C.W.,* 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶9. The juvenile court must conclude, by clear and convincing evidence, that it is in the child's best interest and that one of the conditions set forth in R.C. 2151.414(B)(A) is applicable.

{¶19} Where, as in the instant matter, a motion for permanent custody is filed by a children services agency, the trial court's decision is governed by R.C. 2151.414(B)(1), which provides:

> [T]he court may grant permanent custody of a child to [the agency] if the court determines at the hearing * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a)  * * * the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b)  The child is abandoned.
>
> (c)  The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d)  The child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two-month period, or the child has been in the

temporary custody of one or more public services agencies * * * for twelve or more months of a consecutive twenty-two-month period and * * * the child was previously in the temporary custody of an equivalent agency in another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code [to be an abused, neglected, or dependent child] or the date that is sixty days after the removal of the child from home.

{¶20} When determining the best interest of the child at a hearing held pursuant to R.C. 2151.414(D)(1), "the court shall consider all relevant factors, including, but not limited to, the following:"

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services

agencies * * * for twelve or more months of a consecutive twenty-two-month period, * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

For purposes of division (D)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code [to be abused, neglected, or dependent child] or the date that is sixty days after the removal of the child from home.

{¶21} The trial court can find that it is in the best interest of the child that custody be permanently transferred to a public agency after having considered the factors identified in R.C. 2151.414(D)(1). R.C. 2151.414(D)(2) states that a court, "shall commit the child to the permanent custody of a public children services agency" if all of the following are met:

(a) The court determines by clear and convincing evidence that one or more of the factors in division (E) of this section exist and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b)  The child has been in an agency's custody for two years or longer, and no longer qualifies for temporary custody pursuant to division (D) of section 2151.415 of the Revised Code.

(c)  The child does not meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d)  Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

{¶22}  When making a determination as to whether a child can be placed with either parent within a reasonable period of time, or whether a child should be placed with either parent pursuant to R.C. 2151.414(E), a court "shall consider all relevant evidence" and determine by clear and convincing evidence that one or more of the following exists as to each parent:

(1)  Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the

court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing * * *

(3) The parent committed any abuse * * * against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

* * *

(16) Any other factor the court considers relevant.

**{¶23}** Pursuant to R.C. 2151.414(B)(1), when the trial court rules on a motion for permanent custody, it must initially make the determination as to whether it is in

the best interest of the child and then determine whether any of the factors enumerated in the statute also apply.

{¶24} In the instant matter, as the child has been in Appellee's custody for a two year time period, R.C. 2151.414(D)(2) is the applicable standard. Therefore, the trial court is required to make a best interest finding and a determination that all four factors have been met. It is undisputed that the child has been in the custody of Appellee for at least two years and that the child cannot be placed in an independent planned permanent living arrangement. It is also undisputed that no further extensions of the temporary custody order can be granted. Therefore, sections (b), (c) and (d) of R.C. 2151.414(D)(2) have been satisfied.

{¶25} The remaining factor requires the trial court to determine by clear and convincing evidence that one or more of the factors enumerated in R.C. 2151.414(E) exist and the child cannot be placed with either parent within a reasonable time, or should not be placed with either parent. If such placement is not possible, then permanent custody shall be granted to Appellee.

{¶26} In its judgment entry, the trial court set forth numerous factors in support of its order granting permanent custody to Appellee. Specifically, Appellant failed to comply with the case plan without justification; Appellant failed to complete drug and alcohol counseling; Appellant failed to complete mental health counseling; Appellant failed to submit to random drug screens beginning in February of 2015; Appellant's last drug screen was positive for cocaine; Appellant had an outstanding warrant for his arrest at the time of the hearing; Appellant had an extensive criminal

history dating back to 1995 which included instances of drug trafficking and domestic violence; and that Appellant has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside of the child's home. It cannot be overlooked that the court also relied on Appellant's admission that he was currently unable to care for the child.

**{¶27}** The trial court also considered the additional factors listed in R.C. 2151.414(D)(1), finding: child is in need of legally secure permanent placement and placement cannot be accomplished without granting permanent custody to Appellee; the child is successfully integrated into the foster parents' home and the foster parents are interested in adopting the child; and that the guardian ad litem recommended that permanent custody be granted to Appellee.

**{¶28}** In this case we are presented with a scenario where, according to the record, Appellant was initially in compliance with his case plan. Compliance began to break down when Appellant was charged with petty theft. From there began a complete downward slide for Appellant as to his case plan, where he failed to comply with counseling, random urine screens and to address his outstanding arrest warrants. Importantly, Appellant admitted that he was not ready to currently care for the child, testifying, "I want my son but I want my son when I'm totally in the right frame of mind." (Tr., p. 126.)

**{¶29}** The findings made by the trial court as well as a review of the record reveal the trial court did not abuse its discretion and that the judgment was not

against the manifest weight of the evidence. Appellant's first and second assignments of error are without merit and are overruled.

ASSIGNMENT OF ERROR NO. 3

THE APPELLANT WAS DEPRIVED OF HIS RIGHT TO A FAIR TRIAL BY REASON OF PROSECUTORIAL MISCONDUCT, IN THAT THE PROSECUTOR THROUGHOUT THE TRIAL ASKED IMPROPER LEADING QUESTIONS.

ASSIGNMENT OF ERROR NO. 4

THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL BY REASON OF COUNSEL'S FAILURE TO OBJECT TO THE PROSECUTOR'S ASKING OF IMPROPER LEADING QUESTIONS ON DIRECT EXAMINATION.

**{¶30}** Appellant's third and fourth assignments of error relate to the conduct of his trial counsel. Appellant asserts that in-house counsel for Appellee was engaged in "prosecutorial misconduct" in conducting direct examination through the use of leading questions and that Appellant received ineffective assistance of counsel because of his trial counsel's failure to object to this conduct.

**{¶31}** We first point out that counsel for Appellee is not acting as a "prosecutor." As such, the line of criminal cases cited by Appellant are not applicable in this matter. Regardless, it appears that Appellant is contending that trial counsel's leading questions guided the witness testimony and precluded a fair trial.

Additionally, Appellant alleges that Appellee counsel's cross-examination of Appellant was improperly argumentative.

**{¶32}** Appellant recognizes that trial counsel failed to object to Appellee counsel's questioning at trial. Thus, absent plain error, Appellant has waived this argument on appeal. *State v.* Williams, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977), paragraph one of the syllabus. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶33}** The line of questioning on direct examination of Appellee's witnesses at trial cited by Appellant in his brief are foundational in nature, including requesting the name and current employment of one of Appellant's past therapists. Thus, these are entirely appropriate. Moreover, Appellant cites a handful of similar questions by counsel on cross-examination of Appellant which he contends are argumentative, but appear reasonably innocuous.

Q Okay. Sir, I asked you a question. Why did you write that letter?

A And I just stated to you.

Q I didn't ask to be attacked by you.

A I'm not attacking you. You attacking me [sic].

(Tr., p. 125.)

**{¶34}** The questioning on direct may have been leading in nature but is not of such significance as to affect the outcome of the trial. Similarly, the exchanges on cross-examination are not tantamount to plain error in either their quantity or substance and do not rise to the level of a manifest miscarriage of justice. Therefore, Appellant's third assignment of error is without merit and is overruled.

**{¶35}** Regarding, Appellant's fourth assignment of error, R.C. 2151.352 provides that parents are guaranteed the right to counsel throughout a permanent custody process. This right incorporates the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970). Furthermore, as the permanent custody proceeding involves the termination of parental rights, the standard for effective assistance of counsel is the same as in criminal matters. *Jones v. Lucas Cty. Children Serv. Bd.,* 46 Ohio App.3d 85, 546 N.E.2d 471 (1988). "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation, and, in addition, prejudice arises from counsel's performance." *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

**{¶36}** After a thorough review of the proceedings in the trial court, including Appellant's direct examination at the hearing, the cross-examination of Appellant's case manager and the Appellee's caseworker by Appellant's trial counsel, the record in this case does not demonstrate that Appellant was deprived of any substantive or procedural right which would have rendered the trial "fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838 (1993). Additionally, there was no

behavior on the part of opposing counsel to which Appellant's counsel could properly object. Therefore, Appellant's fourth assignment of error is without merit and is overruled.

## Conclusion

**{¶37}** Appellant presents four assignments of error on appeal. In his first and second assignments, Appellant asserts that the trial court's decision to grant permanent custody to Appellee was against the manifest weight of the evidence and was not in the best interest of the child, although the record demonstrates that the trial court carefully reviewed each of the statutory requirements in making its determination and there is ample evidence in the record to support the trial court's determination. In his third and fourth assignments, Appellant asserts both prosecutorial misconduct and ineffective assistance of counsel, neither of which are supported by the record and hearing testimony. Therefore, based on the foregoing, Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.

Donofrio, P.J., concurs.

Robb, J., concurs.